Good morning. We will call the cases off the calendar exactly in the order in which they appear. The first is Spada v. Unigard Insurance Company. Counsel? Yes, Your Honor. I'm Mark McClanahan, appearing for the plaintiff's appellants. I wish to introduce my client, George Spada, who is on the first bench there, present today. I plan on reserving the time I don't use, at least five minutes. That, at least, is the plan. The case, of course, involves remediation costs incurred by the Spadas, the name has been anglicized, in 1996 and 1997 regarding a landslide. That landslide had affected their lot, had affected the adjoining McCormick property and the adjoining Whitten-Haldoway property, and had affected the public street. That landslide had affected the adjoining Whitten-Haldoway property and the adjoining Whitten-Haldoway property, and had affected the public street. And two, provided defense, even if the suit is groundless, false or fraudulent. And there's an exclusion for damage to the property insured? Yes. And then there's an exclusion, coverage E, quoted in our brief, which is? I think we've read it. Mr. McClanahan, first, you've given us a letter today dated October 9 citing to us a case of Volkowen v. City of Lake Oswego, but you don't tell us what this really holds. Yes. And you didn't attach a copy of the opinion either. It'd be quite nice if you're going to give us something like this on a late date that you also gave us a copy of the opinion so we know what it is. I assume it's pertinent, so tell us what it holds. Yes. It held that loss of lateral support is actual property damage. Now, it was construing the Oregon Port Claims Act, rather than an insurance policy on that occasion. The decision was September 17 of this year, and it was came to my attention after the one-week deadline had been passed, and I apologize for not furnishing the copy. So how does this case support your position here before us today? In the claim for the breach of the duty to indemnify, it supports the district court's decision that there was evidence that the City of Lake Oswego had required the Spadas to remediate, to repair the damage that had occurred to third-party property so that the own property exclusion was not applicable. You mean by putting more support in their own property, that's repairing damage to third-party property? Yes. That's what you suggest your supplemental case support is? Yes. Can you explain, just to clarify the visuals on this, there are two properties that you contend were affected. One is the neighboring property. The other is the road below the property. Now, to what extent did the repairs actually intrude on, if at all, onto the road itself, or were they? You see my problem. I just don't have a good visual on it, because all I could get was a Yahoo map. If I could restate it just a little bit for the facts that I believe the record shows, the street is above these properties. Above, okay. It's being supported by the support. Well, that helps. And so to bring more support on the Spadas property is to support the street and to support two adjoining private properties. The one that gets talked about mostly is the McCormick's, because they were in the lawsuit in the underlying case. But there was the one on the other side, too. And that property also lost a lot of support, according to the affidavits. Is the McCormick's property elevated above the Spadas property? In place, yes. They were so situated that portions of the Spada lot supported the McCormick property, and portions at other places, the McCormick property supported the Spada lot. Both supported Council Crest Drive. Now, jumping around a little bit here, you mentioned that the indemnification provision talks about legal liability. And the district court concluded that because the Spadas were exonerated from that, therefore, there's no coverage. So could you address why there was legal liability? Yes. A city ordinance adopted by the city of Portland under the police power, which the city of Portland has, the full police power of the state of Oregon within its boundaries, has a provision for strict obligation of owners of property that, for whatever reason, endanger other properties. And an order of remediation is made. A determination is made. There are two agencies that have that authority, Bureau of Buildings and the city engineer. The Bureau of Buildings was first, and they wrote a letter to the Spadas and said, we determine that your property, the condition resulting from the landslide, is posed as a hazard to both the street and to private property adjoining. And they copied in that letter both of these private properties. And they directed them to remove that hazard. Under that ordinance, the obligation of the owner in that situation is to do so immediately upon receipt. That's the language of the order. It's a strict liability. There's no defense. There are some things that could have been talked about in an administrative proceeding, such as allocation, according to the spur of the male feet along the street, between the neighbor and Spadas. But basically, there was no defense. So how does that work? They have a Mr. McClanahan. Does the property owner have an absolute duty to take the remedial action when they get the notice? Yes. Do they have some remedy against it in some administrative or what? They could have asked for. Let's say the city was wrong. Could they take the action and they say, okay, we got this notice. We're going to spend $50,000 to shore up our property. But then what do they do then to recover that if the city was wrong? Well, the ordinance deals with some of those questions explicitly and others by application. One of the provisions that was involved is the one enforced by the city engineer explicitly provides that you've got to remediate. And this does not affect your right to sue whoever might have caused the hazardous condition. The ordinances provide that the – there could be a hearing on some limited issues. It's not always too clear what the issues could be. But I suppose one of them would be that there was no hazard. The – because there's a – I think it required a notice of appeal in 10 days. But there could have been some issues contested in an administrative hearing before the code hearings officer under the – we've set out in our brief in the appendix the pertinent provisions of the code. And then the order of the code hearings officer is subject to judicial review and enforcement in the Multnomah County Circuit Court. There's also a provision whereby the Bureau of Buildings doesn't have to wait for the code hearings officer, can go directly to the circuit court. And the ordinances also provide for personal liability in the situation of the owner, but it also provides that the city, if the remediation is not done, that the city can do it itself, and that creates a lien on the property. So you – as I understand your position, you're saying the notice from the city creates a legal liability. Yes. Unless or until that were changed by some court, I suppose. That's correct. And to the extent that you can't recover back from – if it's – if they weren't legally liable in the judicial sense that the court relied on. If they weren't legally liable in the judicial sense, the court exonerates them from the liability, then the insurance company is on the hook for whatever you can't recover, or do they subrogate and go after the responsible parties? Yes. I suppose it's – yes, I believe it's a matter of damages. There's the legal liability to incur the remediation costs. That's what the damages are, by analogy to the toxic contamination, CERCLA-type litigation. And then I suppose that if in some process the legal liability payment obligation is reduced, why there would be – that would affect damages. The – I don't believe it means they weren't liable, because there was an immediate upon receipt obligation to incur. I understand that argument. I was just trying to understand where the insurance comes in. You wouldn't wind up getting double recovery or, as they say, the company, the insurance company, presumably, would subrogate to recovery, right? Yes. And it would have been subrogated. And then under the law of indemnity, when the indemnitor breaches that obligation to indemnify and the indemnity wishes to sue a third person, the one the insurance company would have been subrogated to, then the litigation costs, which the indemnity incurred in suing the third person, are damages that are recoverable for breach of that duty to indemnify. Another question I have is that the Court, in reviewing on the duty to defend, Oregon law – I'm not familiar with Oregon law other than what I've now been educated on by degree. Under California law, there seems to be a somewhat more broader approach to duty to defend. Is Oregon law pretty strict? It seems to limit the Court to looking to just the policy and the complaint. Now, in this case, there was not a complaint, but it was these letters. How do you, staying within the four corners, if that's the Oregon law, staying within the four corners of the policy and the letters, do you get to the duty to defend? Yes. Oregon is a four corners, or I've counted eight corners, but the – is a four corners state. I – we have submitted in our brief that it doesn't mean you don't go to the dictionary. It doesn't mean you don't use knowledge. You might need a translator. You might even remember your college physics about the law of gravity or high school physics. As the case may be, that gets you into lateral support. Well, using the eight corners, why does Unigard have a duty to defend your claims against the city's directives? Sum that up for us. The – there was – there were claims, both in the original three letters that the Court did deal with in its opinion, and then in subsidiary directives and letters, both written and oral directives to the engineer of the Spadas about what specifically they should do, which the Court did not address. In the duty to defend opinion, these letters obviously said there was property damage someplace, and it was because of a landslide. That's an accident. So on the insuring clause, there is coverage because of this. The damages are the duty to remediate. But there have to be damages to some property other than the insured zone property. Yes. There has to be a claim. Yes, that indicates – that implicates this problem of what do you do about the exclusion. And that is the heart of the duty defense issue in this case. Remember that in the duty to identify, the Court found there was – the city had directed repair of the street and – or that there was evidence of such. The duty to defend portion, earlier opinion, had ignored those specific directives with respect to the street. Our analysis is that the letters did not say one way or the other whether there was actual property damage to the street or the neighboring properties. It talks about future damage. It talked about future damage. Additional damage. Additional damage. There were – in the supplemental letters and evidence submitted, the terminology varies. The slope sometimes. Sometimes it's your property. It seems to be, at least as I read, and I could be wrong in this, but it seemed that the gist of it was directives to remediate a potential hazard. That's right. I was just sitting there. It's a danger to people in the same sense that it might be a danger if you had a tiger on your property. Could get loose. Maybe it's going to hurt your neighbor or the street. Fix it. Well, that's how I read it. But that is different from saying it has caused actual damage to a third person. That's right. And we believe that while, yes, it was the condition on your lot, your lot actually slid away, the facts are that there was actually some subsidence on the street. And that's in the record. But the – and some admissions and the request of admissions by the Unigard belated ones after the opinion. But the – it is our position that it was possible, you could imagine fairly reasonably, that if it posed a hazard to a street that's above and to a property that's above, there must be a reason why it's posing a hazard. And that implicates the loss of lateral support. Well, there has to be property damage, doesn't there? According to the – there has to be property damage, doesn't there? And there are two kinds. Property damage is described as physical injury to, destruction of, or loss of use of tangible property. How do you fit this into that definition? The property damage that consists of physical injury is addressed by that loss of lateral support and, as I mentioned, some actual subsidence from the street. And that is the significance of that Vocoon case. We'd ask for judicial notice on this. And as I say, the court – Gives me judicial notice on what? That loss of lateral support is present actual physical injury. You're asking for judicial notice of that? Yes. And that's totally improper. I mean, you haven't gone through the proper procedural – I did do so, yes. You're saying you did that in the district court? Yes, in the district court. Oh, in the district court. Yes. Oh, I've got to go to the district court now, okay. Yes, it's in the record. So you're asking for judicial notice of facts that loss of lateral support is – Principle of physics, yes. Well, was there evidence in this case – I thought there – was there actual evidence that they shut down a lane of the road or – Yes, that's the other prong of property damage is loss of use. All right. So you're not just going on judicial notice. Right. But doesn't there have to be a – for the insurance company to know that it has a duty to defend, doesn't it have to be presented with a claim that there has been damage to property of a third person, not just your own property? So that it seems to me that there's a problem with – on the duty to defend part of your case, putting aside the indemnification for what they repaired, the idea that they get a letter, the letter says, you've got a potential hazard, fix it. There may be some damage to the street, maybe it's subsided, but the letter doesn't assert that. So how would the insurance company know that its duty to defend is invoked? Well, and still within the Four Corners principle, yes. Well, this has been addressed very recently in a supplemental authority that I submitted to you in a 2003 case called Abrams v. General Starr Indemnity, and I believe Ms. Lear counseled on that case, and I believe Judge Strott was on the panel of this court, which certified the question to the Supreme Court of Oregon about the interrelationship of exclusions and the insuring clause. And we believe that the answer is really found in that case, that Ferguson v. Birmingham Insurance, an old case from the Oregon's history, is still good law, and that coverage – when I say it's within the coverage of the policy, they mean in the terminology of Oregon precedent that it's within the insuring clause. And then if there's an exclusion, why it's – you don't have to have the suit or the underlying complaint or claim negating all the 15 or 20 exclusions, such as nuclear accident, war, and things like that. This is just one of 15 exclusions. But here, the demand letters or whatever we'd call them, you know, the directives, it's not that they don't negate every exclusion. It's that they seem to invoke on their face the precise exclusion for damage to the insured property. Well, with all due respect, Your Honor, I don't believe they do. They do make it very possible that that's what the situation is, but they also leave it very possible that there's been a loss of lateral support because of the laws of physics. And if I could go further, the reason the Abrams v. General Starr indemnity case is important in that regard is that in that case, the underlying complaint had alleged facts that made one of the exclusions applicable expressly, the intentional acts exclusion. And so that was what was certified, the very problem that Judge Gould had used to vet it. And the answer was it was covered because in the case, the underlying case, under the rules of pleading and variance and the like, the underlying case, in spite of the allegation of intentional acts, they could have prevailed without amending the pleadings on negligence in spite of the fact they alleged intentional. So we would take this analogy. Suppose you go to the court hearings officer for the hearing, and suppose the only evidence that the city introduced on the issue of hazard coverage under the code was that the street fell down and the house fell down. And by the way, the house did a little bit, and some of the street did. But the – and suppose that was the only evidence. Well, the city's going to win in that – without amending those letters. And I'd like to also add another factor there. We are not just speaking on the duty to defend or the duty to indemnify about the original three letters. Those three letters said, if you want to know what to do, call Mr. Haggerty or Mr. Barrett. And then there are, in evidence, additional letters and written materials from Mr. Haggerty and Mr. Barrett saying what they've got to do, and they mean work in the – in the street. The question was asked earlier, and I didn't get to the answer. Where did the work take place? Seventy-five percent of the remediation costs were for work inside the boundary of the street right-of-way. The original proposal before Immune Guard heard of this case was to drive chance anchors back from this fatal lot into – diagonally into the street right-of-way. Drive what back? Chance anchors. Chance anchors. That go back in like that, and they provide lateral support. This was a lateral support from the very beginning. All the engineers knew it. The city engineers, Mr. Barrett and Haggerty, testified that's what they were talking about, is that they needed lateral support, and they sent these letters in order to restore lateral support. Could you address one – could I ask one question I'd like you to address just briefly, because we're over time, but assuming there is some – there is a duty to defend race under the claims asserted, especially once your client, I think, was – was brought in by a cross-claim or counter-claim assertion, does a duty to defend include making affirmative counter-claims or cross-claims? That seems to me a little unusual to us. Well, I don't believe it's unusual, Judge Gould, in actual practice. As a matter of fact, before the Staters even knew they had a lawyer appointed by Immune Guard, they had started to press the very claims on which they ultimately prevailed in the underlying litigation. They had to send a tort claims notice to the city. And the lawyer appointed by Immune Guard to defend these claims had a deadline, and he sent that letter to the city. Well, sometimes the best defense is a good offense, but that doesn't mean that the insurance company is insuring. Well, it doesn't mean it, I suppose, but the question is resolved on whether the words provided defense has such a plain meaning, as the Court held, that it, as a matter of law, never includes the duty to have a strategic cross-claim or counter-claim. What's your best case that supports your proposition? Scientific safeguards, scientific safeguards. And we have provided you with additional authorities which have cited and followed that principle and that case. The Third Circuit affirmed it on that very ground. The Court was mistaken in suggesting that it was not a very good decision and had been reversed, maybe, even. No, we've provided you the copy of the decision of the Third Circuit. How about Oregon law? Any Oregon law on this? No. Okay. Other than the duties of lawyers are to defend the entire case, not just a part of it. That's like Pennsylvania. The best defense is a good offense. Right. And we'll hear from the other side. Okay. Thank you. I didn't reserve much time, I guess. Thank you. May it please the Court. Lisa, excuse me. Lisa Lear, appearing on behalf of Unigard Insurance Company. Ms. Lear, when did you get the 28-J letter on this Volkman v. City of Lake Oswego? I received it on Monday. It was delivered to my office. Okay. So you've had a chance to read this case? I have. Okay. And I guess I can just start there. I don't believe that case supports what the – what it's being cited for. What the case does is talk about the challenges to jury instructions that were given in a case involving inverse condemnation in which the jury was instructed that the loss of lateral support caused by water flowing over property and eroding part of the property constituted damage that could be considered in terms of inverse condemnation. The court went through and reviewed several portions of the jury instructions, not that specific language. It's listed in the court's opinion that this is part of the instruction given, but that particular language was not challenged and it has nothing to do with the issue here as to whether the loss of lateral support constitutes property damage to other property, which is the issue that we have to deal with in terms of whether there is property damage to third-party property in this situation. Would that be – I'm sorry? Really, I wish you would focus on that, on this duty to defend issue. Certainly. I mean, the court finds on the second opinion that there's facts from which a jury could find the city required plaintiffs to repair damage to the public right-of-way caused by the landslide and then says whether the city required them to do so in addition to repairing their own property is a fact question. Now, under Oregon law, as I understand it, one looks to the policy and the complaint. Correct. And you've heard the argument that's been made by your colleague there. And here you have the court saying on a separate issue, the liability issue, that yes, there are facts here from which you could – a jury could reasonably infer that the demand that was made was to repair the road. Correct. And setting aside whether the law of physics commands it, I read the Oregon cases as saying that if there's any ambiguity in the nature of the demand, that the ambiguities are resolved in favor of the insured. Correct. If that's the case, how can it be that these letters are so clear that when they invoke and even cite other property owners who are affected, but they in fact talk about the roadway as a potential hazard, and the facts on the ground apparently are that the road has been shut down in part, which certainly seems to me in lay terms a loss of use. Why is it this a case where there's a resolution in favor of the insured that there is a duty to defend? Oregon case law makes very clear that you have to separate out what you consider both with the duty to defend and the duty to indemnify. With respect to the duty to defend, you look at the allegations of the claim against the insured and the provisions of the property policy, the insurance policy. But are those cases where Oregon law is – they're talking about complaints, aren't they? They are talking about complaints. What happens when you get into letters which include, please call us if you have any questions? Well, first of all, there are no Oregon cases that deal specifically with a situation where you have a letter like you have here that says – Do you concede the letter is functionally a complaint? I don't concede that it's a complaint. Throughout the case, Unigard has said, assuming that this is a complaint, does Unigard have an obligation under the policy to take this action? But Unigard did not concede that they are complaints. So can a letter assert a claim? A letter can assert a claim, and that's the reason why Unigard went forward with analyzing this issue. But it doesn't establish that there is an actual claim here for damages that's covered by the insurance contract. What's the significance – let me see if I can get your help on something that's confusing me. Assuming that the letters create some sort of duty to defend. I realize that's not your position, but if they do, what's the scope of that when – would that duty to defend include a duty to affirmatively sue somebody or only to defend – to assess and defend? The insurance policy provides that the company will provide a defense if the insured is sued for covered damages. Providing a defense does not mean asserting affirmative claims. The cases on which plaintiffs rely in support of their argument that it should include that are situations where there are two factors that are different. One is that the insurance company refused to defend. The insurers hired their own defense, and that particular defense attorney determined that the best defense was an offense, and therefore, under his strategy, he believed or she believed that the way to properly defend the case was to make the affirmative claims. Does Oregon have a compulsory counterclaim, cross-claim? There are some compulsory counterclaims and cross-claims. The problem you have here that's the second issue in this case that makes it different is that the counterclaims or the claims that were asserted by the Spades against the McCormick's and against the city are not saying, are not counterclaims in the sense that they're seeking indemnity or contribution. These are actual claims for damages to their own property. They were sued for damage to the McCormick property by the McCormick's. The city had made a cross-claim for indemnity or contribution for any liability the city might have for damage to the McCormick's property. They are seeking recovery for damage to their own property. It's not the same thing. They are not interconnected in the way that the cases talk about them. As a counterclaim against McCormick's, who were suing to get damage to their own property, Spades said, not only do we deny we owe you, but you owe us for damage to our property. To our property. What happened on your property is what damaged our property. That goes beyond asserting, defending the claim. Exactly. Is there a common? I'm sorry. Go ahead. Go ahead. No, you go ahead. Well, I just wondered, in framing that, is the underlying issue of who's liable for the damage that has spread across these properties, is there any difference in the nature of the litigation? Because later on when it comes to the indemnification clause, then the company's relying on the fact, well, they were held not liable. So if in order to defend, we're trying to decide who's liable for the damages, the McCormick's claim, they were liable, and they're saying, you said, no, we're not liable, and as Judge Gould put it, said, then, and in fact, you're liable to us, that sort of invokes, that does invoke, it seems to me, this inextricably intertwined language. And that's why I asked if there was a compulsory counterclaim here. It's different in this situation, again, because of the fact that you're dealing with two different properties and different liabilities. The defense to the McCormick's claim was, we don't owe you money for the damage to your property because we didn't do anything that damaged your property. And they, in fact, were found not liable for that. The liability that the McCormick's and the city incurred is separate for damage to the state's property. And that makes this case distinguishable from all of the cases. If you go through even a list of things with the supplemental authorities, again, the two differences are either the defense is directly tied to the claim such as more often it involves things that you would more commonly think of as an affirmative defense or a claim for set-off or contribution. Okay. So as I understand what you're saying, your argument is when the spot is defended the claims by McCormick and the cross-claim from the city, they're basically saying we or things under our control didn't cause damage to anybody. Correct. Leave us alone on that. We're not liable to you. Correct. Then when they asserted affirmative claims, they were saying you did a different damage to our property, you're liable for that to us, right? Correct. So that wouldn't come within the scope of a duty to defend. To defend, correct. Because you see it and you don't think it's so connected to the defense that it would be covered by the policy. Let me ask this question though. Assuming that we accepted your argument on that and we didn't think the duty to defend went as far as is asserted, am I correct that the issue of Unigard's liability for indemnification for the remediation is a totally separate issue and that issue turns on whether Spottas did have a legal liability to shore up their land or shore up the street or whatever the heck it is? It is a separate issue. Under Oregon law, you look at in terms of the duty to defend, it's the allegations and the claim against the insured as compared to the language of the policy. When it comes to the duty to indemnify, the question is whether the insureds are legally liable for damages that are covered by the policy. And the reason the standard becomes different is it may turn out that by the end of the case, you actually have the insureds held liable for conduct that is covered by the policy. So the court has to take that second look at it. In this situation, what the district court found was that, first, there is the potential for legal liability because, in fact, some of the work that was done was done to shore up, to provide lateral support for other properties. But that doesn't solve the issue. There is a question of fact remaining because the fact that you repair your own property and it benefits another property doesn't mean that you're repairing actual damage to other property. But was there a try? Wasn't this decided on a summary judgment? It was. So if there's a question of fact, shouldn't Mr. McClanahan and you be, you know, be allowed to hone up your trial skills and have a good time in a trial? Well, we have to go to the second part of the problem with the indemnity, and that's you have to establish all of the elements of indemnity. And one is that you have legal liability. And in this case ---- Would you address ---- I've read your briefs on and understand the court's ruling, but you just said that you've gone ahead and done this work. They didn't do this work voluntarily. They did this under mandate from the city. To repair their own property. Well, but then the court is saying, and there's a tribal issue of fact as to whether they did it in part. These letters demanded because there was a threat to the road. And again, you're back to the question of a threat. Is there actual damage? But wait a minute. The trial court, the district court says there's a fact issue here. Tribal to a jury on that. Now, you're coming back. The only way you can avoid, I think, what Judge Gould is saying is to say, as a matter of law, that even if they did it, even if the jury found, and I think it's with the district court now, even if the jury were to found that they did it because these letters imposed the obligation because of actual harm or loss of use or whatever to the road, they weren't legally liable because they got exonerated from liability in these other lawsuits. And that seems to me the question is, is not the letter and the ordinance that's being argued here, doesn't that create the legal obligation to take the remediation action, whether or not later on some court comes along and exonerates them? Well, there's two parts to the liability issue here. The first is whether they're legally liable. And that liability has to be for damages covered by the policy. For damages to something other than their own property. Correct. And so you've got the question here, and Unigard disagrees with the trial court's analysis that, in fact, that there is an issue of fact here, that the record shows that the Spadas were required to repair their own property. And, yes, that provides a benefit to other property in the same way that if you had a tree on your property that was tipped over and was going to fall on the neighbor's property, if you didn't fix it, the fact that you cut that tree down so it doesn't fall and damage their house doesn't mean that they have now, that you have now paid to remedy damage to their property. Let's take the hypothetical out and deal with the facts on the ground. Maybe I'm misunderstanding the facts. My understanding was that the road, at least one lane of the road was shut down. Is that correct? Because of the risk that it would collapse. Right. So there was loss of use to the city because of that hazard. Okay. So whatever happened on their property caused the city to shut down a lane on the road. And you're saying that that doesn't constitute loss of use under the policy? I'm not saying it doesn't constitute loss of use. I'm saying what the city asked them to do was to repair their own property to prevent the risk of that. It wasn't a risk. There was an actual shutdown. There was a shutdown that prevented the use of that lane. Loss of use of tangible property. But the shutdown was to prevent a risk of future injury. Right. It doesn't, the policy says loss of use. Okay. The policy doesn't say it has to be, you know, whatever has happened, the city has made a judgment in its wisdom that the road, portions of the road shall not be used. It's not a question of, if that tree is hanging over the roadway and the city says nobody can use this road until that tree is removed, that's loss of use. That's loss of use of the city's property. But the city did not claim damages for loss of use. I mean, it seems to me that you're splitting hairs. Obviously there was damage. If there's damage on, if my property slides completely away and the next door neighbor's property is completely undamaged as of this moment. But it's obvious to anybody that whole thing could go too. Hasn't that property been damaged? If a buyer comes in, no buyer is going to buy it. I mean, all of a sudden its dollar value is probably zero until this is straightened out. It seems to me that you're trying to define damage in a way that's way too narrow in the world. Well, but you're talking about the potential for damage to the lot next door, which is future damage. It's not existing damage. It's a nice metaphysical question. I think Judge Trott's question kind of puts a finger on a critical point here, and that is that in a sense you can argue that the damage is potential if there's a destabilized property. But if you're the property owner above it and your property could slide off a cliff if it goes, or below it and your property could be buried, and you want to sell your property, you've got an immediate decrease in the market value of your property because of that unstable condition on the adjacent property, which I think most people would consider it's a practical damage. I don't know if it's damage to property, but it's an economic damage. Well, I think it would be economic, wouldn't it? If aside from waiting to sell, how about not living in the house? But the Oregon courts have said that economic damage alone does not constitute physical damage to covered property. But this is loss of use. Your own policy language says loss of use. It says loss of use. But again, the loss of use is because of the risk of future damage and not because there is physical damage to that property. So you'd rather wait until the whole thing comes down. Oh, no. I'm not saying that. I'm saying that the point is the property damage that they actually suffered was to their own property. And it was that property that had to be repaired to avoid the risk to the other properties. Which was in the meanwhile suffering loss of use. And the problem that you have here is that we have to distinguish between the first-party coverage in the policy and the liability coverage. The first-party coverage does not cover landslides where there is no structure on the property. And you can't just disregard the limits on the first-party coverage and use the risk to surrounding properties to come into the third-party coverage that's at issue here. This is a very useful homeowners policy. Well, I have a feeling that if, were there cross motions on summary judgment or just Unigard's motion? I believe it was just Unigard's. Basically what the appellant says is reverse the summary judgment and let's have a trial. And Unigard says affirm the district court. Correct. And we're out of here. So, okay. Is part of this in the Oregon Court of Appeals? The underlying case is in the Oregon Court of Appeals scheduled for argument next week. Next week. Yes. Is there any reason we ought to wait and see what happens out of that? Could that possibly affect what's going on in this case? Well, first of all, it certainly cannot affect the duty to defend because whatever happens in terms of the ultimate liability doesn't affect the obligation of the insurance company to defend. The question is the Four Corners issue that we talked about before. In terms of the underlying indemnity issue, I also believe that what happens in the case of the McCormick case is irrelevant because it has been established that someone else is legally responsible for the costs that the McCormick's or the Spada's incurred in repairing their own property. So regardless of how the court deals with the other issues that are remaining in that case, it has been established there was payment by the city of a portion of this. The Spada's chose to settle the remaining portions of it. Whether they recovered the full amount that they could have is a separate issue. It's been determined that they are not legally liable for those damages. Unless the Court has other questions. No, thank you very much. Thank you. A lot of good loitering over a substantial, although not gargantuan sum. So we appreciate both of you serving up these hard issues. If you want to respond, we'll give you an opportunity. I do have a copy of that Bocoon decision in my notebook, and I can pass. For you. I'll give it. I've only got the two. Okay. And the last paragraph of the decision is the one that we cited holding specifically what I said. We mind the opinion for quotes that support our position. Go ahead. Excuse me, I didn't. Never mind. Tell me what you want to tell us. Okay. Well, the last paragraph reads as follows. It's one paragraph short. Whether denominated a claim for loss of lateral support or otherwise, plaintiff's claim for the cost of repairing and stabilizing their property remains a claim for damage to their property. Remains a claim for damage to their property. Well, in that case, the damage that they were suing for was the loss of support to that property. So the question is whether loss of lateral support of the property supported is property damage to that property. And so in this case, it's the loss of lateral support to the street and to the adjoining houses. And I'll provide the copy. Please do. Thank you, counsel. We appreciate your help. The case just argued is order submitted. And we'll move on to the next case, which is competition specialties versus competition specialties. Washington and Florida.
judges: Trott, Fisher, Gould